UNITED STATES, to Use of COLONIAL BRICK CORPORATION et al. v. FEDERAL SURETY CO. et al.

No. 2157.

District Court, D. Maryland.

Nov. 20, 1933.

.248

Raphael Walter (of Sykes, Nyburg, Goldman & Walter), of Baltimore, Md., and Leonard J. Ganse, of Washington, D. C., for plaintiffs.

William R. Semans (of Barton, Wilmer, Ambler & Barton), William D. Macmillan (of Semmes, Bowen & Semmes), and Roszel Thomsen, all of Baltimore, Md., for defendants.

CHESNUT, District Judge.

This case presents a bill of complaint in equity which is described as "ancillary to and in aid of" a suit at law brought under the Hurd Act (40 USCA § 270) by and against some of the same parties and now pending in this court on the law docket. The proceeding seems to be novel and unprecedented.

The use-plaintiffs are unpaid sub-contractors of the National Contracting Corporation which undertook a government contract for construction work at Fort George G. Meade, Maryland. The defendants are:

(1) The Federal Surety Company (a corporation of Iowa now in receivership in that State), which executed the surety bond for the performance of the said contract, and its Receiver; and (2) three separate insurance companies, to wit, the London and Lancashire Indemnity Company of America; the Guardian Casualty Company, and Lloyds Insurance Company of America, who are sued as reinsurers of the Federal Surety Company.

The ultimate relief prayed for is a money decree against these re-insurers for the amount of the unpaid claims of the use-plaintiffs and to that end a discovery of the terms and conditions of the re-insurance agreements is prayed for, and also an accounting with regard to the claims of the use-plaintiffs and other creditors similarly interested.

The Federal Surety Company of Iowa is alleged to be insolvent and it appears from the papers that it has been dissolved by decree of an Iowa State Court and the Insurance Commissioner of Iowa, E. W. Clark, has been appointed its receiver. He is also in his capacity as receiver made one of the defendants to the bill. He especially appeared and moved to quash the service of summons upon him and separately upon the corporation, which service purports to have been made by a United States marshal in Iowa.

The Lloyds Insurance Company of America, a corporation of New York, one of the defendants, has answered the bill denying the existence of any re-insurance contract or other contractual relation between it and the Federal Surety Company with respect to the matters alleged in the bill. The London and Lancashire Indemnity Company of America and the Guardian Casualty Company by their separate counsel have separately appeared specially and moved to dismiss the bill for various reasons, including the following: (a) Both are corporations formed under the laws of the State of New York and neither is a citizen or resident of the State of Maryland and, therefore, the Court is without venue jurisdiction over them in this action (28 USCA § 112 (a); (b) lack of any sufficient cause of action against the defendants disclosed by the bill; (c) lack of equitable rights disclosed by the bill; (d) plaintiffs have complete and adequate remedy at law.

The bill discloses that there is already pending on the law side of this court a suit in the name of United States of America to the use of the Colonial Brick Company v. Federal Surety Company and E. W. Clark, its receiver, under 40 USCA § 270, known as the Hurd Law. The basis of the claim against the re-insurers is set out in the 5th paragraph of the bill. The substance of the allegation is that, the several re-insurers (although not expressly described as re-insurers), "did enter into certain agreements with respondent, Federal Surety Company, the exact dates, terms, provisions and conditions, of which are 'to your petitioner unknown,' by the terms of which agreements said London and Lancashire Indemnity Company, of America, Guardian Casualty Company, and Lloyds Casualty Company and the Federal Surety Company did undertake to apportion among themselves the liability for such loss or losses as might occur by reason of any default in the performance and completion of said public work at Fort George G. Meade, Maryland." It is further alleged that the consideration to the re-insurers was a portion of the premium paid to the Federal Surety Company for its bond and in consideration therefor, the said "London and Lancashire Indemnity Company of America assumed a one-third portion of the liability for the loss or losses under said bond executed to the United States of America as aforesaid"; and similarly that the Guardian Casualty Company assumed a one-third portion and the Lloyds Casualty Company assumed a one-sixth portion of the liability.

At the hearing upon suggestion by the Court, counsel for the London and Lancashire and for the Guardian Casualty Company produced copies of the respective agreements which were accepted by plaintiffs' counsel and it was agreed the bill of complaint would be appropriately amended to adopt the said contracts so produced and to have them filed as exhibits with the bill by appropriate references therein. An examination of these contracts shows them to be the standard form of re-insurance agreement in common use by surety companies in America. Thus, in the case of the Guardian, that Company is expressly named as the re-insurer in the contract and the Federal Surety Company is named as the re-insured. The subject matter of the re-insurance contract is the ordinary simple contract of re-insurance between an insurer and its re-insurer, relating to a particular single risk, and not an assumption by the re-insurer generally of all outstanding risks of the re-insured.

Objection to the venue, made by two of the several re-insurers, is, in my opinion, well taken. 28 USCA § 112 (a) is applicable, and provides in part that:

"No civil suit shall be brought in any district court against any person by any original process or proceeding in any other district than that whereof he is an inhabitant."

The several re-insurers are all corporations of the State of New York and although some of them may have heretofore been or are doing business in Maryland as foreign corporations, they are not "inhabitants" of this district. Galveston, H. & S. A. R. Co. v. Gonzales, 151 U. S. 496, 14 S. Ct. 401, 38 L. Ed. 248; Standard Stoker Co. v. Lower (D. C. Md.) 46 F.(2d) 678, 683; Rose Fed. Practice, § 301. The return to the summons shows that none of them were served with process in Maryland but by the marshal in New York. It is true that this objection would not be good if the suit were under and authorized by 40 USCA § 270, which expressly provides that such a suit shall be "in the name of the United States in the district court of the United States in the district in which said contract was to be performed and executed, irrespective of the amount in controversy in such suit, and not elsewhere," but it has finally been authoritatively decided that a suit brought under this section is a suit at law and not a suit in equity. Illinois Surety Company v. United States, to Use of Peeler, 240 U. S. 214, 223, 36 S. Ct. 321, 60 L. Ed. 609. See, also, Davidson Bros. Marble Co. v. United States, 213 U. S. 10, 29 S. Ct. 324, 53 L. Ed. 675. Section 270 is a very special statute, conferring jurisdiction both as to subject matter and as to venue, of a very particular matter. Reading its provisions gives no indication of the legal possibility of extending its terms by construction and implication to subject re-insurers of the original surety on the bond therein mentioned to suit at the instance of sub-contractors either in the district of which they are inhabitants or in the district in which the contract was to be performed. And the plaintiff, I think, gains nothing by merely calling this equity suit one "in aid" of the suit at law, which alone is authorized by the section. It is not perceived how there can be two suits, one at law and one in equity, under this statute which expressly provides "that where suit is so instituted by a creditor or by creditors, only one action shall be brought." We are not dealing here with a situation which might possibly arise after judgment has been obtained in the law suit and proven uncollectible, even though

this may finally be the result in the pending suit at law, as it is alleged in this present proceeding that the Federal Surety Company is insolvent. If the plaintiffs recover judgment in the law suit and cannot collect it, other supplemental action against the re-insurers (if maintainable at all) would not be under the particular statute but on other general legal or equitable grounds, and the several re-insurers if liable at all to the use-plaintiffs in this case would seemingly be entitled to be sued in the districts of which they are respectively inhabitants. No precedent or other authority has been called to my attention by counsel to warrant the maintaining of this equitable proceeding under the Hurd Law.

But even if the procedural objection is not conclusive, there is fundamental objection to the maintenance of this suit against re-insurers, arising out of the general law of re-insurance contracts. It is, by the great weight of authority, clearly the law of re-insurance that the original insured may not sue the re-insurer, because there is no privity of contract between them. And the benefit of the ordinary re-insurance contract inures directly to the original insurer as so re-insured, and in the event of insolvency of the original insurer the proceeds of the re-insurance policy are assets for the benefit of general creditors and not of the original insured as a particular creditor. The latter has no lien either legal or equitable on the re-insurance policy. This well established law affecting the important subject of re-insurance is generally stated in the case law and recognized by leading text books on insurance. Morris & Co. v. Insurance Co., 279 U. S. 405, 408, 49 S. Ct. 360, 73 L. Ed. 762; Allemannia Fire Ins. Co. v. Firemen's Ins. Co., 209 U. S. 326, 332, 28 S. Ct. 544, 52 L. Ed. 815, 14 Ann. Cas. 948; Hicks v. Poe, 269 U. S. 118, 121, 46 S. Ct. 29, 70 L. Ed. 187; Consolidated Real Estate & Fire Ins. Co. v. Cashow, 41 Md. 59, 74. The applicable law on the subject is comprehensively but succinctly summarized in 19 Cyc. page 640; Richards on Insurance (4th Ed.) § 456; Couch's Cyc. of Insurance Law, Vol. 8, § 2260. To the same effect, see, also, 33 C. J. 57, 59; 14 R. C. L. 1452, § 618; Annotation in 35 A. L. R. 1348.

Of course, re-insurance contracts, just as original contracts of insurance, in the absence of statutory regulations, are flexible in their nature, and any particular contract of re-insurance may, by its special provisions, expressly or by necessary implication or by separate agreement between the parties, confer rights upon the original insured which would not otherwise exist. For illustration, see Globe Nat. Fire Ins. Co. v. American Bonding & Cas. Co., 198 Iowa, 1072, 195 N. W. 728, 200 N. W. 737, 35 A. L. R. 1341, recognizing an exception to the general rule where the re-insurance was obtained at the express request of the insured and as a condition of his acceptance of the original policy. The most common exception to the general rule arises in cases of general re-insurance by one company of all its outstanding risks or all those outstanding in a particular locality (compare Shoaf v. Palatine Ins. Co., 127 N. C. 308, 37 S. E. 451, 80 Am. St. Rep. 204), in consideration for a transfer of all or a substantial part of its assets to the re-insuring company. This exception proceeds upon the theory of a substitution of parties by mutual consent. But we have no such exceptional situation here.

It may be noted that paragraph 13, lines 146 to 155, of the re-insurance contract, provides that:

"If, under any law, this re-insurance agreement is required to be in such form as to enable the obligee or beneficiary of the bond to maintain an action thereon against the Re-Insurer jointly with the Re-Insured, and upon recovering judgment against the Re-Insured to have recovery against the Re-Insurer for payment to the extent to which it may be liable under this re-insurance and in discharge thereof, then this agreement shall be deemed to be a compliance with such law" —and in paragraph 4 of the general conditions, lines 77 and 78, it is provided that in making payment of a loss under certain conditions:

"The Re-Insurer, if it desires to do so, may pay its share of the loss by means of a check drawn in favor of the obligee under the bond."

I do not consider these provisions of the general conditions applicable to the instant case. So far as I am aware, there is no federal law, by either statute or decision, that makes these provisions of the bond applicable in this case. They were probably inserted because the general form of bond was prepared for use in any one of the United States and to meet the local conditions in some state or states resulting from special statutes or court decisions contrary in effect to the general law of re-insurance above mentioned.

The 5th prayer for relief in the bill prays that the plaintiffs "may have full and complete discovery from the respondents and each of them, concerning the arrangements,

transactions and dealings between respondents, Federal Surety Company, London and Lancashire Indemnity Company of America, Guardian Casualty Company and said Lloyds Casualty Company concerning said public work at Fort George G. Meade, Md." The only basis for this relief, so far as the London and Lancashire Indemnity Company of America and the Guardian Casualty Company are concerned, appearing in the bill (other than the re-insurance agreements mentioned) seems to be contained in the 17th paragraph of the bill where it is alleged that these two companies, together with the Federal Surety Company and the Lloyds Casualty Company, "maintained a representative on said public work." The legal significance of this allegation is not apparent. It is not alleged that the representative was maintained on the work by reason of the re-insurance and it is entirely possible that there may have been other and unrelated reasons therefor. In any event, I do not consider this allegation sufficient to establish any direct liability on the re-insurance policies from these defendants to the plaintiffs.

It results that the motions of the London and Lancashire Indemnity Company of America and the Guardian Casualty Company to dismiss the bill of complaint as to them must be granted.

The remaining question arises on the motions of E. W. Clark, Iowa receiver of the Federal Surety Company, to quash the service of summons on himself and separately on the Federal Surety Company, on the ground that the Federal Surety Company has been dissolved by the Iowa State Court and in consequence thereof and by said order of that court is no longer suable anywhere; and as to the receiver, because no permission of the court has been obtained to sue him. This question seems to be of little practical importance to the parties in this particular case, the heart of which is an effort to recover against the re-insurers. The bill must be dismissed as to two of them and the third has, by answer, formally denied any re-insurance relation to the Federal Surety Company. While the plaintiffs are of course not concluded by the answer, it seemed to be assumed at the hearing that the inclusion of the Lloyds Insurance Company of America was probably due to a mistake of facts by plaintiffs' counsel. Under these conditions the continuance of the suit as against the Federal Surety Company and its receiver would seem to be, so far as the plaintiffs are concerned, the preservation of a shadow rather than the substance of a law suit. If this suit cannot be maintained against the re-insurers there is nothing to be gained by the plaintiffs in continuing the suit against the Federal Surety Company and its receiver beyond what may be obtained against them in the suit at law. Plaintiffs' counsel, in opposing the motion maintains that, while it is true as a general rule that a dissolved corporation may not be sued [compare, however, Hammond v. Lyon Realty Company (C. C. A. 4) 59 F.(2d) 592], nevertheless in a suit under the Hurd Law against the surety on a contractor's bond, the rule is not applicable, and furthermore, it is not necessary to obtain the permission of a state court to sue the receiver of such a surety, citing as authority therefor United States v. Illinois Surety Co. (D. C. N. C.) 238 F. 840, affirmed under the title of Hopkins v. United States, 246 U. S. 655, 38 S. Ct. 423, 62 L. Ed. 924. See, also, Bashford-Burmister Co. v. Aetna Indemnity Co., 93 Conn. 165, 178, 105 A. 470. If this particular case were a suit at law under the Hurd Law, in my opinion the position would be sound as to the receiver, at least, and indeed Judge Coleman has so ruled in the suit at law referred to in an oral opinion refusing to quash the service of summons in that case on the receiver. But, as, for the reasons already indicated, this particular case is not a suit under and authorized by the Hurd Law, I am of the opinion that the motions to quash the service of summons on the Federal Surety Company and its receiver, should be granted. Even if the service of summons were not quashed, these defendants could for the reasons given successfully move to dismiss the bill and their counsel has indicated that he would so do. Counsel for the defendants may prepare appropriate orders accordingly.